## State v. Sewell
*[Cite as 7 AOA 248]*

*Case No. 89 CA 161
Mahoning County, (7th)
Decided September 14, 1990*

*James A. Philomena, Prosecuting Attorney, Kathi
L. McNabb, Asst. Prosecuting Attorney, Mahoning County Courthouse, 120 Market Street,
Youngstown, Ohio 44503, for Plaintiff-Appellee.*

*Anthony Koury, 1001 Mahoning Bank Bldg.,
Youngstown, Ohio 44503, for Defendant-Appellant.*

O'NEILL, P.J.

The appellant appeared in the trial court charged with felonious assault along with a firearm specification. Following trial, a jury returned a verdict of guilty and the appellant was sentenced. A timely notice of appeal was filed therefrom.

On March 23, 1989, the appellant and Daron Little were involved in an argument. Mr. Little struck the appellant in the face resulting in a broken nosed and a chipped eye bone. As the result of this altercation, the appellant filed a complaint charging Mr. Little with assault. On the evening of March 24, 1989, Mr. Little returned to the appellant's house with appellant's cousin, Patrick Coleman, who was then living with appellant. The appellant testified that he did not approve of Patrick Coleman and Mr. Little using cocaine in his apartment and that he had told Patrick Coleman to take his clothes and move out. The appellant testified that on this occasion Mr. Little began threatening him. In fear of his life, the appellant had obtained a gun from his grandfather for protection. At about 11:30 p.m. on March 25, 1989, the appellant heard a knock on his door and, looking through a window, observed his cousin, Patrick Coleman. The appellant testified that he told his cousin to take his clothes from the porch where they had been left, however, Mr. Coleman insisted on entering appellant's house but appellant refused permission. During this time, Mr. Little was in his car parked in appellant's driveway. Appellant, after being threatened by Mr. Little, ordered Mr. Little to leave his driveway and Mr. Little moved his car across the street.

Mr. Little testified that the appellant had run into his driveway pointing a gun at him. He went on to state that he had backed out of the driveway and parked across the street, approximately three houses down from the appellant's house. Mr. Little went on to testify that he was standing outside of his car, with the door open, and that he and the appellant were arguing back and forth across the street (Tr. 33). Mr. Little further testified that the appellant then stood on his front porch and the argument continued. He heard the girlfriend of the appellant state to the appellant that he should shoot Mr. Little. At this point, Mr. Little stated that his girlfriend, who was in his car, said to him "Come on, he ain't going to do nothing. I turned. Then I heard the gunshot" (Tr. 37). Mr. Little then observed that his girlfriend, LaShawn Little, had been shot.

The appellant testified that, when Mr. Little backed his car out of his driveway and parked in the street, he observed him reach down in his car and pull a gun out (Tr. 117). He went on to state that Mr. Little pointed the gun at him and he immediately ran into his bedroom and came out with his grandfather's gun (Tr. 117). The appellant went on to testify that he returned to his front porch with his gun and that, at that point, Mr. Little pointed his gun at him.

"*** I said basically I had wanted to scare them. But I had pointed the gun at him also because he had pointed his gun at me. If he would have fired first, I would have gotten hit" (Tr. 122).

Officer David McKnight testified that he investigated this incident and that he had interviewed some witnesses amongst whom was a person named Junior Davis.

"Q. Did any witnesses give you any information as to regard to Mr. Little having a gun?
"A. A Junior Davis gave me a statement as to him observing a man in the street with a pistol.
"Q. Did he describe what that pistol looked like?
"A. He said -- I believe he said it was silver. I'm not quite sure if he said it was silver or not. I'm-- he did say the gentleman in the street stated he had a gun." (Tr. 28).

The first assignment of error contends that the trial court erred in refusing to instruct the jury on a charge of aggravated assault.
"4. Aggravated assault, R.C. 2903.12, contains elements which are identical to the elements defining felonious assault, R.C. 2903.11, except for the additional mitigating element of serious provocation. Thus, in a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury. ***.

"5. Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time. \*\*\*." *State v. Deem* (1988), 40 Ohio St. 3d 205, Syl. 4 and 5.

Considering the events which occurred prior to the day of the shooting incident, the ongoing threats by Mr. Little as to the appellant, the armed threat by Mr. Little as to the appellant and Mr. Little's injury which had occurred just a short time prior to the shooting, it would have been reasonable for the trial court to determine that the provocation involved was serious and reasonably sufficient to incite the defendant into using deadly force. In view of this finding, it is our conclusion that the trial court erred in refusing to instruct the jury on a charge of aggravated assault.

The second assignment of error complains that the appellant's statement to police officers was taken in violation of his Fifth Amendment right against self incrimination.

One police officer, David McKnight testified. Officer McKnight presented, as state's exhibit six, a written statement given to him by the defendant-appellant. The following dialogue took place during trial:

"Q. Before you proceeded to talk to the Defendant, did you go over any preliminary matters?

"A. Absolutely. Prior to interviewing a witness or Defendant, we obviously read them their Constitutional rights, explain to them what their rights are, have them look them over prior to signing their rights.

"Q. Specifically, if you recall, would you tell the Court and jury what rights it is you explain (sic) to the Defendant?

"A. He basically has the right to remain silent, anything he says can and will be used against him in a court of law, he has the right to an attorney, to have an attorney present during the interrogation, and if he cannot afford an attorney, one can be provided for him. Of course, anything he signs will be used in a court of law.

"Q. I take it you read him those rights?

"A. I read him those rights;, advised him I was a police officer, had him read them himself so he could understand the rights.

"Q. Did he appear to understand what his rights were?

"A. Yes, he did.

"Q. Did he likewise provide to you a written verification he understood what his rights were?

"A. He signed the statement with his name.

"Q. I will hand you what we have marked as State's Exhibit No. 6. Take a look at that and tell me if you can identify that.

"A. Yes. This is a copy of his statement. Seems to be all intact. His signature and my signature. And the time and date." (Tr. 25-26).

State's Exhibit No. 6 is a printed form containing what amounts to the Miranda warning. This exhibit also contains a waiver wherein the signator agrees that he had read or that there had been read to him the statement of rights as presented therein and that he fully understood those rights. The waiver goes on to state that any statement that he makes is a statement of his own free will.

Officer McKnight went on to testify that:

"\*\*\* A lot of times we advise them, like in this type of argument, there is always two sides, it's better to have your side known in case there is anything we missed, we can talk to those people. He agreed he wanted to give his side of the statement, his side of the story. That is exactly what he did." (Tr. 25).

The appellant argues that the advice by the police officer that "\*\*\* it's better to have your side known in case there is anything we missed \*\*\*" (Tr. 25), it amounts to cajoled coercion. We agree with the appellant. Police officers are duty bound to inform a defendant of his rights pursuant to Miranda. Police officers are required to ascertain that if a defendant waives those rights, he waives them knowingly. Relative to the Miranda rights, there should be nothing further. We agree with the appellant that the suggestion that there is always two sides to a case certainly engenders in the mind of the accused hope or fear in respect to the crime charged and unconsciously impels a defendant to make a statement. *Bram v. United States* (1897), 168 U.S. 532.

Accordingly, we find this second assignment of error to be with merit.

The third assignment of error contends that the appellant's failure to make a pretrial objection to the Miranda violation should be relieved for good cause shown.

We agree with the appellant that there certainly was not any objection raised as to his statement given to the police and we notice and

determine this error pursuant to Rule 52(B) Rules of Criminal Procedure.

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Cr. R. 52(B).

Accordingly, this third assignment of error is found to be with merit.

Assignment of error number four contends that failure by counsel for the appellant to object at trial to the Miranda violation deprive the appellant of his Sixth Amendment right to competent counsel.

In view of our disposition of previous assignments of error, we do not find it necessary to address this assignment of error.

The fifth assignment of error complains that the failure by appellant's counsel to call a critical witness deprived the appellant of his Sixth Amendment right to competent counsel.

This assignment of error addresses the testimony by Police Officer McKnight wherein he testified that he had secured evidence from a witness, Junior Davis, relative to the possession by Mr. Little of a silver pistol (Tr. 27-28). The jury, during their deliberation, sent a question to the judge "Why wasn't the witness who saw the gun brought to the hearing?" (Tr. 158). Darron Little and his wife had testified that, at the time of this incident, Mr. Little did not have a gun. The appellant basically argues, under this assignment of error that the testimony of the missing witness was very essential to his affirmative defense of self defense.

Under the evidence, as presented, we do not agree with this contention.

"'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *United States v. Morrison,* 449 U.S. 361, 364-365 (1981)'". *Strickland v. Washington* (1984), 466 U.S. 668, 691 and *State v. Bradley* (1989), 42 Ohio St. 3d 136, 142.

Without objection, the trial judge instructed the jury, relative to the claim of self-defense:

"A defendant is not in a position to claim self-defense if he sought trouble and armed with a dangerous weapon he provoked a fight or renewed a fight that had broken off and did not attempt to avoid it or leave the scene of the trouble." (Tr. 150).

The appellant himself testified that, after he observed Mr. Little in the street with a gun, rather than closing the door to his apartment and

breaking off the potential incident, he went to his bedroom, secured a gun and returned to his front door. It is our opinion, under this state of the evidence, the defendant-appellant failed to establish the affirmative defense of self-defense and, accordingly, the failure to call the witness named by Officer McKnight had no affect on the judgment or the verdict by the jury.

This fifth assignment of error is found to be without merit.

Pursuant to this opinion, the judgment and sentence of the trial court is reversed and this cause is remanded to the trial court for further proceedings according to law and according to this opinion.

DONOFRIO, J., and COX, J., concur.